Welcome to the Fifth Circuit Court of Appeals. We're delighted to have you with us today. This is the second day of our panel and we have three cases on the docket this morning. We'll take a short break after the second case because we need to set up some audio equipment for one of the attorneys. You're probably familiar with our lighting system. If you're not, when you see the yellow light that means your time is about to end and when the red light comes on that means your time has ended. And so you should wrap up the last brilliant thought that you have. You should just say that and then sit down and I'll remind you if you don't. But we're delighted to have you with us today and so we'll call the first case number 20-30524 Raymond Harold Kimble v. Joseph Lopinto, et al. and we'll hear from Ms. Casey. Good morning and may it please the court. Anna Casey on behalf of Mr. Raymond Kimble. The question in this appeal is whether the district court applied the correct legal standard when it dismissed Mr. Kimble's claims challenging the conditions of his pretrial detention. We submit that the district court did not. First, it was error for the district court to dismiss his sex-based equal protection claim as frivolous. The Supreme Court and VMI has been clear. All gender-based classifications today warrant heightened  scrutiny but it did not. Second, it was error for the district court to fail to even address his other equal protection claim. Mr. Kimble's claim that he was placed in a punishment cell because he was gay was adequately pled and articulated through live testimony in front of the magistrate judge. Quick question about that. The magistrate held a Spears hearing. I've looked at it a The magistrate specifically asked Mr. Kimble during the hearing about the nature of his sexual orientation discrimination claim. She asked him in the discussion about the administrative segregation. She says is it totally random where your cell ends up and he says no mine wasn't totally random. The magistrate judge probes further and he says I you know I was there because I was being punished and she actually asks why were you being punished and he says he's unequivocal he says this is an ROA 313 because I told Sergeant Silver Nagel that I was gay. Yeah I saw that and so then your argument is that the magistrate simply failed to address that claim altogether. Correct. She did she did the magistrate did did purport to apply a rational basis review to a claim about him being in the ADSEG. I think that she misunderstood part of his claim and she goes through analysis seeming to take equal protection analysis for end cells versus middle cell individuals so I think that that's what you're thinking through. She says something like he has he's not in a suspect class he has no fundamental right. Yeah that's what I'm getting at. And so that I think that's a that's a different issue here you know he both pleads in his complaint it's actually in his pro se brief obviously it's in my supplemental brief as well that he says I was being punished because I was gay. If you look at the magistrate judge opinion or the report and recommendation that becomes the opinion she never mentions his sexual orientation she never mentions an intentional discrimination theory which he you know obviously it could be more clear but he is a pro se incarcerated plaintiff at this point and in the live testimony. While we're on this I know we want to go back to the grooming policy but while we're on this issue has he pled or at any point in the Spears hearing explained that his statement that he was gay directly related to his cell assignment or is that a conclusion that he's drawing that he told him that and then the cell assignment was made that he's associating the reaction or did the did anyone at the jail say oh well because you're gay this is how we're going to incarcerate you pending your trial or hearing. Right so I think here the the interaction with the magistrate judge taking that question first she says was your assignment random and he says no and she says I was being punished she says why were you being punished she says because I was gay so at that point you know that is his allegation that he was placed there because he was gay he doesn't have you know an intentional moment. There's no jail policy and there's not a statement of a guard or anybody saying well if you're gay this is where we're going to house Mr. Kimball doesn't allege that all you know homosexuals are placed a specific thing but rather you know in a traditional you know if you think of an employment discrimination he alleges circumstantial evidence including you know pretty offensive anti-gay statements that are made by guards and then when he notifies guards that he's sick of being picked on they say okay and then they put the next thing he knows they put him in a cell that's known as a punishment cell both to him and to others. Turning to I guess starting with the. So the grooming so did the remind me did the Magistrate or the District Judge you say that they applied the wrong standard of view did they did anyone cite our I mean we have obviously a long line of precedents that say that separate grooming policies is constitutional. I think what is the first case on that Hill? Hill is Hill is the published case on that and I think the first one as well. Okay so did was that cited was was that case cited? So the yes and she cites I think an unpublished case I think it's Ryan v. City of Mansfield. So so I mean I understand your argument but if Hill is still binding precedent then the claim is frivolous is that is it not? I think that here while even if the district court applied binding for circuit precedent I think here this court has said you know multiple times that it has both the authority and the obligation to implement changes of law and here Craig v. Boren which is actually decided about three months after Hill you know announces heightened scrutiny as the appropriate standard of review for all gender-based classifications. So that would be I mean we submit an implicit change of law if not express change of law. Craig is Craig is different. Young boys drink drink more than young women so we're going to not sell them to Isn't that what Craig v. Boren? So Craig is 76 and it is the near beer case out of Oklahoma. It's decided a couple months after Hill which I think is important when you run through the analysis of whether or not this panel can announce a change of law that the Supreme Court has you know implement or that Supreme Court has announced. When was Turner v. Safefield decided? Turner v. Safefield I think is I would not be exactly sure I'm pretty sure it is after Craig but I'm not positive. So because that's I'll tell you frankly my difficulty with this is that we are in the prison context right and we have a long line of cases that apply Turner. Turner giving a lot more discretion in the prison context. We have even cited Turner in a gender-based prison conditions case since VMI. So I hear what you're saying but it's it seems like we have continued to apply the Turner idea of greater deference to prison officials in terms of gender-based differences in prisons. So it's difficult for me to see that this VMI decision was 97. Right. It was it yeah it was somewhere around. It's definitely after Turner that's for sure. It was after Turner so 2000 so now we're in 20 we're on the eve of 2023 so that's you know two and a half two decades and change where our court just hasn't noticed that the analysis changed. Your Honor I think obviously this was not you know briefed to this court that Turner was applied right I filed my supplemental brief and there was no response saying it doesn't apply. But I do think on the merits I think Johnson v. California which is a Supreme Court decision out of 2005 is extremely important. There the equal protection claim is a race-based claim. There the defendant said you shouldn't apply strict scrutiny this is a prison and the Supreme Court says no. The Supreme Court says actually deference to prison administrators is fundamentally at odds with equal protection jurisprudence because the government's power is at its apex in a prison context and searching judicial review is appropriate. Unlike other oh sorry Judge. I was going to say following along on our timeline of cases that we also have Longoria from this court which I think too is consistent with our prior cases in spite of the argument about the heightened standard. How would you distinguish that or do you think that those we should just either take this case en banc eventually or is that your ultimate goal? Is there some way for us to grant you the relief that you want on this claim or at least to reverse the district court at this time and distinguish those cases? I think here the important you know and Judge Duncan mentioned this before but I think the important thing here is at the pleading stage this is at least a non-frivolous claim. The Supreme Court has adhered to the announcement in Craig v. Boren that heightened scrutiny applies when there's a gender-based classification time and time again. I think it would be difficult to write an opinion that is in direct you know conflict with this line of cases. I think as I said in Johnson v. California out of the Supreme Court this you know while there are some constitutional rights that might need to be impinged in certain prison contexts the Supreme Court has suggested that equal protection jurisprudence is you know equal protection rights are not some of those rights. You know and here in the practicality they, appellees in the grievance policy kind of faintly point towards hygiene and security as their justification for haircut policy. Of course that's not a justification for a gender-based haircut policy and the Supreme Court has said. Oh I mean it might be I mean if we're just speculating I mean so what is the policy for with respect to women's hair length? It's shoulder length. So shoulder very long hair is a shoulder length so there's some difference. The men's is I don't know what how you articulate the men's policy but they could be both geared towards some kind of hygiene based or safety based interest of the prison but there's a slight difference between men and women's grooming because as I walk outside and look around me I see a slight difference between men and women's hair length right. Not always but often. That and that's exactly a justification for a haircut policy right but it's not a justification for a gender-based one. So the idea well the idea would be you know clearly the appellees care about the hygiene and security of females and they don't believe having shoulder length hair is going to hopefully to impinge on their hygiene and security having shoulder length but somehow they think that men's hair will be you know put at risk by having longer hair. My point was that a prison could reasonably recognize that men and women often have different hair styling choices. Right but I think the lesson of VMI is even if you know often certain men and women have different preferences the Supreme Court has said that gender-based classifications must have an exceedingly persuasive justification. You know Justice O'Connor I think makes the common in VMI you know while the defendants say most you know most women couldn't meet the physical strengths that VMI requires most men couldn't either right. So here most men. Well VMI is a very different case. I mean VMI they weren't letting in any women and they were saying well you have this separate school over here I forgot what it was called and that school appeared not to be even remotely the same as VMI but doesn't Justice Ginsburg wrote that opinion right. So that didn't I mean is there any discussion there I mean just because you have you have to let in women in VMI do you have to have the absolute same grooming standards absolute same physical readiness standards for men and women at VMI. So I don't think the lesson of VMI and the other modern equal protection claims are that you have to have the exact same you know standards. I think that the lesson of those cases is that when the government treats men and women differently purely basis on this on the basis of sex they have to have an exceedingly persuasive justification. You know we started this conversation with Craig V. Boren you know at issue in that case is not entrance into the illustrious VMI it's access to near beer right. So I think any sense that the Supreme Court you know is only concerned with certain you know more kind of seen as Heidi you know more important things like education is I don't think it's consistent with the Supreme Court's precedent. I think the Supreme Court has said give us a gender-based classification and we will subject it to heightened scrutiny. VMI even says gender-based classifications are inherently suspect which is what we have here. So I don't think that's consistent with Turner and I think that that I think that Johnson v. California is illustrative of that as well here. If we agreed with your premise then we would subject every single prison policy that differed between a men and a women's prison to this exceedingly would require an exceedingly persuasive justification for every single policy. I think that I think the less like if you rule in our favor the question is rather plausible claims are stated right. So I think you could have regulations where it was so obvious that the justification you know is exceedingly persuasive something like if the at issue is sexual violence or something where you could say that claim is not plausible. I mean plaintiffs meet a 12b6 standard in prison context and other context you know over and over. Are you saying that there's no regulation permissible that is indexed by sexual orientation or gender? Are you saying that while perhaps admissible it was rather deployed here in a punitive fashion. So I think that there's one thing that punishing someone for their status and it's something else in terms of the prison's ability to to sort their inmates. I mean obviously there's a real interest in sorting out you don't put females and males together in a prison environment. I think that I think that I think that would be an awkward situation in some ways and so you say well we're not talking about male or female we're talking about about a person who's gay and a person who's gay also presents disciplinary problems and and safety problems for that person themselves in a prison environment. I mean most of those people in there for a good reason. So I have difficulty sorting out exactly what you're saying. We have all this body of law but that's that's the just gender base. We moved here we're talking about running a prison that protects with where the duty of the state to protect the prisoners when you take away their liberties you've got to correspond to protect them. So are we talking about just the fact that in this particular situation there was a punitive action taken or are you talking about something? I don't see how that sweeps so broadly. I think you know there's three claims at issue so I think I think I'm responding to the third equal protection claim that's based on sexual orientation. Sorry responding to his equal protect I think your question is related to a sexual orientation equal protection claim. There the allegation is that he was punished because of the sexual orientation. I think as you flagged you know that they are protect the appellees are responsible for protecting Mr. Kimball as he's incarcerated. I would note that in Johnson v California actually the allegation there was that they were making race-based classifications to reduce racial violence and even there the Supreme Court said that's not enough. What I'm trying to get at is that and it's one thing to have a case where the alleged that this person is gay and for and they were punished treated differently and it's a matter of punishment not in response to to safety standards etc. That seems like a one-off situation that perhaps they have a claim individually but that necessarily implicates the total regime standards. I think our third claim is that it is an equal protection violation that they're not you know while we do make a due process challenge which is claim two in claim three he's alleging that he was treated differently because he was gay and they placed him in a punishment cell because he was gay while other straight detainees were placed in middle cells that have better you know advantages less restrictions because of the sexual orientation when he told the guards he was gay they placed him in a punishment cell so that is an intentional discrimination theory. What's the factual support for this being something other than a one-off situation? So here they've repeatedly done that? You have evidence that they've done this to others? So he does not claim that the guards placed all gay people in punishment cells. Rather he claims that he was subject to anti-gay offensive statements I think but they had you know statements that they made to him that are pretty offensive that are in the record as well and then when he notifies the guards I'm gay I don't want to be in a two-person cell they say okay and then they put him in what's known as a punishment cell so that is his allegation he claims again that that punishment cell wasn't just the open available cell but rather they actually had to move Merton Bailey another detainee to make room for him so these are the factual allegations that support his theory that he was placed there because of a sexual orientation. Is there any other evidence of differential treatment other than this situation? There isn't other factual allegations that this this prison has a policy of punishing all gay individuals rather his claim is that he was placed in a punishment cell because of his own particular sexual orientation. Okay thank you. We still have time for a vote. Mr. Mullaley. Good morning. May it please the court James Mullaley on behalf of Sheriff Lupinto. I wanted to first direct my attention to some of the questions raised by your honors. Judge Englehart brought up that there was an issue regarding you know whether or not what evidence there is vis-a-vis whether he was put in a cell because he said he was gay and and there is no factual record and it's certainly at the very least an issue about the temporal proximity of any such claim right that when when did a guard allegedly tell him what he told him and how soon after that was he allegedly put in a disciplinary cell. I don't there's no evidence in the record. I'm sorry pleading stage right correct correct this is true but I don't think that's adequately pled either is it I don't think he states that immediately upon notifying the I think it was a the deputy that he was that he was gay he was placed in a punishment cell but you just heard counsel say that he was played he complained and look there are a lot of claims before this court involved in this particular individual and there are several cases in the lower court in the Eastern District as well as the Middle District of Louisiana and brought by this particular individual so he he's well versed in finding the law and asserting claims that fall under the purview of the law. I asked at the outset about the Spears hearing because I did sense that there were multiple claims brought and the magistrate had a hearing properly I assume to try to narrow down what exactly he's claiming that's that's correct and she did and they were sufficiently narrowed if you look at the record there there are a plethora of grievances filed just pertaining to this particular lawsuit I would submit to you that if you go to Jeff's parish sheriff's office it would go to the ceiling of this building but he was put in the cell because he complained he couldn't be in a two-man cell and somewhere in the record he filed to amend his complaint where he's complaining about you know he went back to general population didn't like that either because he was being threatened for being gay so you know the allegations are all over the place I agree with your honor that the judge had the Spears hearing to try and understand what exactly he was saying it's still not at all clear what they're saying is that the magistrate narrowed the claim she did address the ad seg claim I'm being put in 13 and not four but she didn't address the specific I'm being punished because of my sexual orientation claim that's what they're nothing to speak on that again that this is the magistrate judge issued her report I didn't follow a risk dispositive motion or pleading did the record before the court is not the record I produced but I believe as I think perhaps you judge Duncan said she did loosely address the claim she'd while she does not in her report and recommendation at any point mentioned that he was alleging that he was punished for being gay she applies the relevant standard which is in the prison context the rational basis standard and she finds while she doesn't mention the claim that he was punished because he's gay she finds that the he wasn't a member of suspect class he wasn't implicating a constitutional right rational basis test applied and that there was a rational basis for the for the assignment at minutes administrative segregation I think I don't think that that war I think she addresses the claims officially it's not this court is in a position where it needs to remand to further address it with regard to judge Duncan's claim the hill is precedent right judge angle argument mentioned Longoria it's also been standard did the court applied did the district court apply here in in which with regard to the to the grooming policy the I mean you prevailed but the question is I think our task is to determine whether the court applied the proper standard I think counsel properly frame the question so I get so what standard did the court apply and why is that correct okay so and it was very well framed issue up the magistrate judge simply dropped Duncan dropped Hill into the middle of the report and recommendation and found that because Hill is precedent it's frivolous I mean she says federal courts of Long Hill unconstitutional for penal facilities to have different policies regarding hair length for males and females see Hill etc that's the extent of it you know it's a very general statement obviously it doesn't go well you know and then there's the standard of review and it's a in in researching you know in Longoria and also Williams v Hoyt in the 1977 case also adopted Hill and as did an 11th circle with a 11th circuit case night be Thompson with approval in a lot of these cases in the other district court cases as well that that's how that claim is handled you know it's Hill therefore frivolous you agree that it's a frivolous claim I sense that you agree that it is a non meritorious claim well it's a frivolous claim I want to agree with I should say agree with you I think because Hill is precedent and because Hill stands for what it says as it is now then the claim before the district court was frivolous and that the magistrate are you aware of any case from any circuit court evidently not ours because we haven't addressed it that applies the intermediate scrutiny framework from VMI to a grooming a prison grooming policy certainly not I tried to find it certainly not in this circuit in the other thing about VMI is as you said in a lot of other cases cited by plaintiffs is those those are really statutory state statutory schemes that created a dichotomy here again while the magistrate didn't address it all the cases that do address it we start with the proposition this is a prison setting and that prison officials have broad discretion in overseeing jails and and in the area of conditions of confinement but that it's a prison setting is certainly important and and that's why that standard is applied I have cases I think I read one about the relative conditions between men and women's prisons and someone might say well the conditions over here in the men's prison are awful the women over here are in better conditions and therefore that's a gender-based equal protection violation I can imagine we'd have some we have some people as you suggest I can imagine I think we'd Marriott examples in every context in every policy I mean I do this for a living I've done this for 20 years I can I can imagine I can imagine going through every single policy I mean the irony is VMI is about having separate institutions for men and women in the Supreme Court said no that's that's not okay because of the unique qualities of VMI and the women weren't going to get that you know those but here nobody would suggest that we can't have men and women's prisons no at least I I mean I shouldn't say that somebody will suggest it and again it seems it seems a claim that would be a difficult one to make certainly and and there's no count there's no dispute that the purpose of the policy vis-a-vis men is the health and hygiene and safety of the prison you know Belle v. Wolfish held that the government has an interest in making sure that weapons and drugs are not that are the prison and don't aren't available to detainees and there's there's no doubt in this case or in a lot of other cases that have addressed similar issues that you know that that's one way you smuggle weapons and contraband into a jail right if you have hair and you wonder what the remedy in this case would be would it be a make the women prisoners have the same hair length yeah I mean and then again you brought up a good point about shoulder length you know I don't know that that's so disparate you know we're not talking about women can grow his hair as long as they want or have dreads or whatever else you can imagine you talk about the difference of maybe an inch above the collar line I'm not sure I would there be a difference in hygiene you just mentioned maybe smuggling things in their hair like weapons or blades or something like that I'm not so sure that the rationale for that is is not different for women and men and with regard to hygiene I mean are we just recognizing that women are cleaner than men and have better hygiene or is there some particular track record or in the prison system that causes that policy to to be a good one certainly not in the record of this case your honor no and and you know I mean I think clearly there there is there are kids there's clear it seems there's a concession made for women to wear their hair a bit longer than men yeah I don't know what a record in a fully developed case I would be surprised if somebody could prove a hygiene a distinction in hygiene would justify that policy frankly right but does that mean it's unconstitutional I don't know I think that therein lies the question right turning to there's a due process claim yep the due process claim yeah just quickly you know plain plaintiff appellant took issue with the fact that that that the magistrate judge cited the sand and standard I I don't think that that the reference that the magistrate cited unpublished opinion riding city of Mansfield which cited the the sand and standard and and they're correct if you the district courts apply it all the time and it's usually applied in much the same manner as it was applied in this case it's dropped into the analysis and there's not much analysis I would submit to the court that if you took those that one citation to rhyme in the other cases in the sand and standard out of this opinion would make no difference whatsoever the the reasoning is still sound that there would be the his assignment ad sig in this case was not arbitrary or capricious he has to be removed from a two-man cell he's putting administer segregation the fact that he was on in cell not a middle cell is of no constitutional moment whatsoever so the the citation to the sand and standard notwithstanding that the opinion is still correct in my view in that you know all of the traditional constitutional standards still apply you know that the plaintiff doesn't have a right constitutional right to his classification status he doesn't have a member of suspect class and you know he's you know that the rational basis applies and that the his assignment to the administrative segregation was not arbitrary and capricious so I don't think you even have to get to whether or not sand and should apply to pretrial detainees it does in this circuit the district courts routinely cite the sand and standard to claims brought by pretrial detainees there's a couple reference in the magistrates opinion there's there's a bunch more rattly I found at barbies court and a few others so in close that with regard to the equal protection claims again I think that the court apply the right standard the plaintiff's not a member of substance suspect class he doesn't implicate a constitutional right a rational basis it applies and he's not stated that there was no rational basis or penological interest advanced in this case I think the magistrate court said well to the extent that they the plaintiff complained that you know this this thing where the end cell doesn't get out until the end of the day or the beginning of day in the middle cells do I think the court said that the the process was imperfect but not a rational and I think that that could that's well said to be we could always probably do better and maybe maybe that that that can be looked at but it's certainly not irrational and it certainly wasn't done to punish anybody it's the way the jail operates there's no evidence that again they put him in an end cell to punish him that's the way they're rotated as a matter of jail policy does it make any difference he is a pretrial detainee versus someone who's been convicted or is it just detention is detention and this is how we do it no it is a difference we're pretrial detained we're detention facility for the most part and it does make a difference you pre-trial detainees can't be punished for the charges which they arrested pre adjudication and there's no evidence in this case that even is alleged by plaintiff that any actions were taken against him because of the crimes with which he was charged and I would submit to you that again there's really no evidence in the record other than plaintiff's allegations that he it was it was a punishment they moved him to admin instead because he's having problems a general population and I think you know I mean then the record gets a little confusing but the the placement of plaintiff in the cell and at segregation was not arbitrary capricious and so which is the standard for pre-trial detainees and so I think it's it was it was lawful so I'm nothing further unless you have some questions no thank you thank you thank you miss Casey you have five minutes for application of EMI has been applied by the DC Circuit the 8th Circuit and the 9th Circuit in a prison context sorry sorry judging about them the VMI heightened scrutiny has been applied by the 9th Circuit the 8th Circuit and the DC Circuit in the context of a prison case okay any gender so a case that's helpful and and you probably cite those in your brief with respect to men versus women yes okay in equal protection sex-based claim okay and what were the nature of those claims if you know the nature of those claims I can pull that up well most of them are conditions so the idea that the female prison might be smaller that the female I think the DC Circuit one is the female prison is further away from where the families were so most of those are conditions which is similar I think which is important to prove that heightened scrutiny it accounts for the real differences between women and men and it allows both the government and prison officials to account for those differences I mean I think we have we have a case Yates Alder and I think conditions case exactly and Yates instructs this court that when examining these types of equal protection claims that the record is important I think Yates at the end says you know we owe due deference to prison officials but on this record we cannot say that men and women are not similarly situated so I think what relief do you think you're entitled to I think here you know most immediately we're entitled to we're entitled to an opinion that says this claim is not frivolous and that it should go back to the district court for discovery you know mr. Kimball is an incarcerated plaintiff he's made these allegations on what he knows but discovery will show and also give appellees an opportunity to actually articulate a justification for a gender based classification that's what happened in you know Yates went back for discovery which is this court's decision and that's what happened in you know the DC Circuit case that we side as well this is interesting because it I have it here in front of me I mean we cite Turner we don't do not side VMI it says if legitimate penological goals can rationally be deemed to support the decision to treat male and female prisoners differently that's I mean that's it that's interesting two thousand case right I mean we do have to grapple with our own precedent right and this panel as you know we can't just declare but I think this court has said you know multiple times that when there's been an intervening change of law this court has an obligation to implement this yeah it has to be unequivocal though but I think there's also cases that say when it's inconsistent which I think is a little bit lower than unequivocal and I think it's difficult here to show how these I think Hill is an opinion with not a lot of analysis I think it's an opinion that's pretty that is inconsistent with Craig v. Boren and all of the progeny the Supreme Court has continuously adhered to the standard of scrutiny that applies with gender-based classifications and I think that's appropriate here on the question I think you guys had a back-and-forth about the remedy here to be clear this isn't just an allegation that he wants longer hair it's rather that officials here face pre-trial detainees here face discipline if they have longer hair so the stakes are higher for these male inmates than female inmates if mr. Kimball was a woman he wouldn't have been disciplined and here he was and that discipline turned purely on his gender not the conduct right because if he was a woman he could have had the long hair and not have been disciplined these differences matter because of that turning finally to the equal protection claim based on a sexual orientation the district court did not address this claim doesn't mentioned his sexual orientation what might be kind of confused with rational basis review on this I do notice that the magistrate judge talked about disrespectful comments made by the guards perhaps that's where the magistrate is factoring in these comments about these these anti-anti anti-gay comments that are referenced in the testimony there are multiple disrespectful statements some are based to a sexual orientation and some are not I think it's a stretch to read this opinion as dealing with his sexual orientation claim well no it's just dealing with whether allegations of as a district mere verbal abuse by prison guards and you know whether it's me or not I don't know but she's under treating I think I think it's just being treated in a different statement in a different part of the of the magistrate's opinion that doesn't mean it's right or not but I'm just I think Romer and Johnson v. Johnson on this are instructive that discriminatory animus can never be a legitimate government interest so to the extent you read this paragraph as related to his sexual orientation claim I think that that reasoning isn't what is there but but and yet analytically we might say there's a difference between verbal harassment by guards disrespectful comments by guards and punishment based on sexual orientation right but I think his allegation which has sufficient factual support at this stage is that he was punished because of his sexual orientation and the statements revealed the intent of that punishment okay thank you counsel I know you're pro bono and appreciate it well thank you we'll take them out or under advisement